UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

CARRIE J. BROWN,                                    Case No. 14-14499

               Plaintiff,                          Marianne O. Battani
v.                                                 United States District Judge

COMMISSIONER OF SOCIAL SECURITY,                   Michael J. Hluchaniuk
                                                   United States Magistrate Judge
               Defendant.
_____/

**REPORT AND RECOMMENDATION**
**CROSS-MOTIONS FOR SUMMARY JUDGMENT (Dkt. 13, 14)**

## I.  PROCEDURAL HISTORY

    A.    <u>Proceedings in this Court</u>

On November 25, 2014, plaintiff filed the instant suit seeking judicial review of the Commissioner's unfavorable decision disallowing benefits.  (Dkt. 1).  Pursuant to 28 U.S.C. § 636(b)(1)(B) and Local Rule 72.1(b)(3), District Judge Marianne O. Battani referred this matter to the undersigned for the purpose of reviewing the Commissioner's decision denying plaintiff's claims for a period of disability, disability insurance benefits and supplemental security income.  (Dkt. 3).  This matter is before the Court on cross-motions for summary judgment.  (Dkt. 13, 14).  Plaintiff also filed a reply brief in support of his motion for summary judgment.  (Dkt. 15).  These motions are now ready for report and

recommendation.

B.    Administrative Proceedings

Plaintiff filed the instant claim for disability insurance benefits and supplemental security income on June 6, 2012, alleging disability beginning January 25, 2012.[1]  (Dkt. 10-2, Pg ID 47).  Plaintiff's claims were initially denied by the Commissioner on September 19, 2012.  *Id.*  Plaintiff requested a hearing and on July 2, 2013, plaintiff testified before Administrative Law Judge ("ALJ") Kevin J. Detherage who considered the case de novo.  (Dkt. 10-2, Pg ID 68-107).  In a decision dated July 26, 2013, the ALJ found that plaintiff was not disabled.  (Dkt. 10-2, Pg ID 47-62).  Plaintiff requested a review of this decision, and the ALJ's decision became the final decision of the Commissioner when the Appeals Council, on October 27, 2014, denied plaintiff's request for review.  (Dkt. 10-2, Pg ID 32-35); *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 543-44 (6th Cir. 2004).

For the reasons set forth below, the undersigned **RECOMMENDS** that plaintiff's motion for summary judgment be **DENIED**, that defendant's motion for summary judgment be **GRANTED**, and this matter be **DISMISSED**.

---

[1] Plaintiff was denied benefits on a previous claim for disability in an Administrative Law Judge decision dated January 25, 2012.  (Dkt. 10-2, Pg ID 47).

## II.    FACTUAL BACKGROUND

### A.    ALJ Findings

Plaintiff was born in 1962 and was 49 years old on the alleged disability

onset date.  (Dkt. 10-2, Pg ID 61).  Plaintiff had past relevant work as a fast food

worker.  *Id*.  The ALJ applied the five-step disability analysis to plaintiff's claims

and found at step one that plaintiff had not engaged in substantial gainful activity

since January 25, 2012, the alleged on-set date.  (Dkt. 10-2, Pg ID 50).  At step

two, the ALJ found that plaintiff had the following severe impairments: left

shoulder osteoarthritis, tendinitis, and partial thickness infraspinatus tendon tear

cervical degenerative disc disease; diverticulitis; colitis; obesity; depression; post-

traumatic stress disorder.  *Id*.  Plaintiff's gastroesophageal reflux disease (GERD),

vitamin B12 deficiency, skin infections, back and hip pain, sciatica and substance

abuse, which was in remission, were deemed non-severe.  (Dkt. 10-2, Pg ID 50-

51).  At step three, the ALJ found no evidence that plaintiff's combination of

impairments met or equaled one of the listings in the regulations.  (Dkt. 10-2, Pg

ID 51-53).

The ALJ determined that plaintiff had the residual functional capacity

(RFC) to perform light work, except:

> she may only occasionally perform pushing, pulling, or
> reaching in any direction with the non-dominant left
> upper extremity; she may only occasionally climb ramps

3

> and stairs, but never climb ladders, ropes, or scaffolds;
> she may occasionally balance, stoop, kneel, crouch, and
> crawl; she is limited to simple, routine, non-production-
> rate tasks, involving only occasional interaction with co-
> workers, supervisors, and the public.

(Dkt. 10-2, Pg ID 53). At Step Four, the ALJ found that plaintiff could not

perform her past relevant work as a fast food worker. (Dkt. 10-2, Pg ID 61).

However, the ALJ determined that, considering plaintiff's age, education,

experience, and RFC, there were jobs that exist in sufficient numbers that plaintiff

can perform and therefore, plaintiff had not been under a disability from the

alleged onset date through the date of the decision. (Dkt. 10-2, Pg ID 61-62).

  B.   Plaintiff's Claims of Error

  Plaintiff argues that the ALJ's decision of non-disability is not supported by

substantial evidence because the ALJ improperly discounted the opinion of

plaintiff's treating psychologist. (Dkt. 13, Pg ID 740). Plaintiff specifically

argues that the treating physician rule requires the ALJ to conduct a six-step

analysis to objectively weigh the opinion evidence. *Id*. According to plaintiff, if

the ALJ finds that the treating physician's opinion is not entitled to controlling

weight, the decision must contain specific reasons for the weight assigned to the

treating source's opinion, supported by evidence in the case record and must be

sufficiently specific to make clear to any subsequent reviewer the weight the

adjudicator gave the treating source's medical opinion and the reasons for that

weight. *Id* (citing *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 242 (6th Cir. 2007).  Plaintiff argues that the reasons for giving the opinions of plaintiff's treating psychologist, Dr. Findley, little weight are not supported by substantial evidence. *Id*.

Plaintiff cites Dr. Findley's evaluation from November 2012, when he first began treating plaintiff, as well as a letter from February 2013 and a mental impairment questionnaire completed in June 2013 as all containing Dr. Findley's opinions that plaintiff was markedly limited in her ability to handle routine work stress on a consistent and sustained basis, and that her psychological impairments would result in a varying ability to concentrate and in her missing more than 3 hours of work per day.  (Dkt. 13, Pg ID 742).

Plaintiff argues that the ALJ erred by relying on Dr. Findley's comments denoting progress and improvement, while ignoring notes reflecting ongoing symptoms of depression and anxiety.  Plaintiff also argues that Dr. Findley's opinions were groundlessly dismissed based on the unsupported accusation that Dr. Findley had financial incentive to find plaintiff disabled because that designation would allow for the authorization of additional treatment sessions. Plaintiff contends that the ALJ's "boilerplate" statement that Dr. Findley's opinion is not reliable to the extent it is inconsistent with the RFC demonstrates the absence of explanation necessary to trace the ALJ's path of reasoning, citing

*Lowrey v. Comm'r of Soc. Sec.* 55 Fed. Appx. 333, 339 (6th Cir. 2003).  (Dkt. 13,

Pg ID 744).  Finally, plaintiff argues that the ALJ's decision cannot be upheld

because it fails to provide an accurate and logical bridge between the evidence and

the result, citing *Pollaccia v. Comm'r of Soc. Sec.*, 2011 WL 281044 at *6 (E.D.

Mich. Jan. 6, 2011).  (Dkt. 13, Pg ID 745).

     C.    <u>The Commissioner's Motion for Summary Judgment</u>

The Commissioner contends that substantial evidence supports the ALJ's

weighing of conflicting medical opinion evidence.  (Dkt. 14, Pg ID 755).  The

Commissioner notes that the ALJ gave little weight to treating psychologist Dr.

Findley's opinions to the extent they conflicted with the ALJ's mental RFC

finding.  *Id*.  The Commissioner recites the ALJ's detailed and lengthy explanation

for his assignment of little weight to Dr. Findley's opinions.  First, the

Commissioner notes that Dr. Findley's opinions were largely consistent with the

ALJ's RFC, the key distinction being the ALJ's rejection of Dr. Findley's finding

that plaintiff was markedly limited in maintaining attention and concentration for

extended periods of time and completing a normal workday and work week

without interruptions from psychologically based symptoms.  (Dkt. 14, Pg ID 756-

757).  More importantly, according to the Commissioner, those opinions were

inconsistent with Dr. Findley's own treatment notes, with plaintiff's documented

improvement with treatment, with the absence of treatment with prescription

6

medications, with plaintiff's own reported activities and abilities and the

conflicting opinion of state agency reviewing psychiatrist, Dr. Newhouse. (Dkt.

14, Pg ID 756). The Commissioner emphasizes that Dr. Findley's clinical findings

did not show a significant lapse in memory, concentration or motivation. No more

than mild impairments in short-term memory and concentration were noted in Dr.

Findley's November 2012 evaluation. The Commissioner further argues that Dr.

Findley's regular notation of plaintiff's improvement of symptoms and

functionality are inconsistent with his opinions of marked limitation (Dkt. 10-10,

Pg ID 635-639, 665, 671). (Dkt. 14, Pg ID 759).

The Commissioner argues that consistency between the physician's opinion

and the rest of the record is a key consideration in weighing the probative value of

the opinion, citing 20 C.F.R. §§ 404.1527(c)(4), 416.927(c)(4); Social Security

Ruling 96-2p. (Dkt. 14, Pg ID 758). The Commissioner argues the ALJ-noted fact

that plaintiff lived independently with generally normal daily activities and even

provided childcare for her granddaughter is inconsistent with Dr. Findley's

opinion that plaintiff could not handle the sustained concentration and ordinary

stress associated with a workplace. According to the Commissioner, the ALJ was

justified in finding that this discrepancy weighed against the probative value of his

opinions. *Id*.

The Commissioner argues that even if the ALJ's apparent inference that Dr.

Findley's opinion was influenced in some part by a desire to ensure plaintiff's ongoing eligibility for treatment were improper, it would be too slender a reed on which to rest the rejection of the opinion in its entirety. According to the Commissioner, the ALJ's speculative suggestion was only one small piece of a much larger discussion of Dr. Findley's opinions, and even if it was an improper inference, it would constitute harmless error and not justify remand. (Dkt. 14, Pg ID 763).

Furthermore, the Commissioner argues the ALJ was justified in assigning more weight to consulting psychologist, Dr. Newhouse, than to treating Dr. Findley. Dr. Newhouse reviewed plaintiff's records available on September 24, 2012, and opined that she retained the ability to do simple tasks on a sustained basis. (Dkt. 10-3, Pg ID 175).

In sum, the Commissioner argues that Plaintiff's daily activities, her consistent improvement throughout her treatment with Dr. Findley, her generally normal mental status examination findings, and inconsistencies between Dr. Findley's opinions and the other evidence of record provided the ALJ with good reason for rejecting the treating source opinion. (Dkt. 14, Pg ID 761). According to the Commissioner, where, as here, the ALJ provides good reasons, supported by substantial evidence, for rejecting a treating source opinion, the Court should not disturb the ALJ's findings, citing *Smereczynski* v. *Sec'y of Health & Human*

*Servs.*, 944 F.2d 296, 299 (6th Cir. 1991). *Id*.

     D.    <u>Plaintiff's Reply</u>

In her reply brief, plaintiff argues that the ALJ erred in finding Dr. Findley's treatment notes inconsistent with his opinion regarding her residual functional capacity. (Dkt. 15, Pg ID 766-67). Plaintiff contends that the ALJ erroneously focused on comments in the treatment notes relating to plaintiff's progress and gradual improvement, but ignored the notations of on-going symptoms such as decreased energy, somatic complaints, depressed mood, irritability, anger, anxiety and guilt, which supported Dr. Findley's opinions. *Id.*

Plaintiff further argues that her failure to miss any scheduled appointments with her therapists cannot establish good reason for not according controlling weight to Dr. Findley's opinions. She contends that the ALJ's misstated accounts of her daily activities do not form a logical bridge between the evidence and the conclusion that she can tolerate the stress of unskilled work. (Dkt. 15, Pg ID 768).

Moreover, according to plaintiff, the ALJ erred in assigning great weight to Dr. Newhouse's opinions on plaintiff's abilities because his review of plaintiff's records was incomplete. Dr. Newhouse's review occurred prior to Dr. Findley's evaluations, indicating a guarded prognosis and his belief that plaintiff was unable to carry out even routine repetitive tasks on a consistent and sustained basis. Dr. Newhouse's review also predated Dr. Findley's treatment of plaintiff, which

resulted in 15 pages of unreviewed treatment notes.  Plaintiff contends the ALJ

erred in not considering these facts before assigning greater weight to an opinion

not based on a review of a complete record.  *Id.*

Finally, plaintiff asserts that the ALJ's unsupported accusation, that Dr.

Findley's opinion was driven by illegitimate financial motive, has no place in the

substantial evidence evaluation.  According to plaintiff, the ALJ's reliance on this

baseless speculation in concluding to give Dr. Findley's opinion little weight

amounts to reversible error.  (Dkt. 15, Pg ID 769-70).

## III.   DISCUSSION

### A.   Standard of Review

In enacting the social security system, Congress created a two-tiered system

in which the administrative agency handles claims, and the judiciary merely

reviews the agency determination for exceeding statutory authority or for being

arbitrary and capricious.  *Sullivan v. Zebley*, 493 U.S. 521 (1990).  The

administrative process itself is multifaceted in that a state agency makes an initial

determination that can be appealed first to the agency itself, then to an ALJ, and

finally to the Appeals Council.  *Bowen v. Yuckert*, 482 U.S. 137 (1987).  If relief is

not found during this administrative review process, the claimant may file an

action in federal district court.  *Mullen v. Bowen*, 800 F.2d 535, 537 (6th Cir.

1986).

This Court has original jurisdiction to review the Commissioner's final administrative decision pursuant to 42 U.S.C. § 405(g). Judicial review under this statute is limited in that the court "must affirm the Commissioner's conclusions absent a determination that the Commissioner has failed to apply the correct legal standard or has made findings of fact unsupported by substantial evidence in the record." *Longworth v. Comm'r of Soc. Sec.*, 402 F.3d 591, 595 (6th Cir. 2005); *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 528 (6th Cir. 1997). In deciding whether substantial evidence supports the ALJ's decision, "we do not try the case de novo, resolve conflicts in evidence, or decide questions of credibility." *Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007); *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984). "It is of course for the ALJ, and not the reviewing court, to evaluate the credibility of witnesses, including that of the claimant." *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 247 (6th Cir. 2007); *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 475 (6th Cir. 2003) (an "ALJ is not required to accept a claimant's subjective complaints and may ... consider the credibility of a claimant when making a determination of disability."); *Cruse v. Comm'r of Soc. Sec.*, 502 F.3d 532, 542 (6th Cir. 2007) (the "ALJ's credibility determinations about the claimant are to be given great weight, particularly since the ALJ is charged with observing the claimant's demeanor and credibility.") (quotation marks omitted); *Walters*, 127 F.3d at 531 ("Discounting credibility to a certain degree is

11

appropriate where an ALJ finds contradictions among medical reports, claimant's testimony, and other evidence."). "However, the ALJ is not free to make credibility determinations based solely upon an 'intangible or intuitive notion about an individual's credibility.'" *Rogers*, 486 F.3d at 247, quoting Soc. Sec. Rul. 96-7p, 1996 WL 374186, *4.

If supported by substantial evidence, the Commissioner's findings of fact are conclusive.  42 U.S.C. § 405(g).  Therefore, this Court may not reverse the Commissioner's decision merely because it disagrees or because "there exists in the record substantial evidence to support a different conclusion." *McClanahan v. Comm'r of Soc. Sec.*, 474 F.3d 830, 833 (6th Cir. 2006); *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) (*en banc*).  Substantial evidence is "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Rogers*, 486 F.3d at 241; *Jones*, 336 F.3d at 475.  "The substantial evidence standard presupposes that there is a 'zone of choice' within which the Commissioner may proceed without interference from the courts." *Felisky v. Bowen*, 35 F.3d 1027, 1035 (6th Cir. 1994) (citations omitted), citing, *Mullen*, 800 F.2d at 545.

The scope of this Court's review is limited to an examination of the record only.  *Bass*, 499 F.3d at 512-13; *Foster v. Halter*, 279 F.3d 348, 357 (6th Cir. 2001).  When reviewing the Commissioner's factual findings for substantial

12

evidence, a reviewing court must consider the evidence in the record as a whole, including that evidence which might subtract from its weight. *Wyatt v. Sec'y of Health & Human Servs.*, 974 F.2d 680, 683 (6th Cir. 1992). "Both the court of appeals and the district court may look to any evidence in the record, regardless of whether it has been cited by the Appeals Council." *Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 535 (6th Cir. 2001). There is no requirement, however, that either the ALJ or the reviewing court must discuss every piece of evidence in the administrative record. *Kornecky v. Comm'r of Soc. Sec.*, 167 Fed. Appx. 496, 508 (6th Cir. 2006) ("[a]n ALJ can consider all the evidence without directly addressing in his written decision every piece of evidence submitted by a party.") (internal citation marks omitted); *see also Van Der Maas v. Comm'r of Soc. Sec.*, 198 Fed. Appx. 521, 526 (6th Cir. 2006).

B.   <u>Governing Law</u>

The "[c]laimant bears the burden of proving his entitlement to benefits." *Boyes v. Sec'y of Health & Human Servs.*, 46 F.3d 510, 512 (6th Cir. 1994); *accord*, *Bartyzel v. Comm'r of Soc. Sec.*, 74 Fed. Appx. 515, 524 (6th Cir. 2003). There are several benefits programs under the Act, including the Disability Insurance Benefits Program (DIB) of Title II (42 U.S.C. §§ 401 *et seq*.) and the Supplemental Security Income Program (SSI) of Title XVI (42 U.S.C. §§ 1381 *et seq*.). Title II benefits are available to qualifying wage earners who become

13

disabled prior to the expiration of their insured status; Title XVI benefits are available to poverty stricken adults and children who become disabled.  F. Bloch, Federal Disability Law and Practice § 1.1 (1984).  While the two programs have different eligibility requirements, "DIB and SSI are available only for those who have a 'disability.'"  *Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007).  "Disability" means:

> inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.

42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A) (DIB); *see also* 20 C.F.R. § 416.905(a) (SSI).

The Commissioner's regulations provide that disability is to be determined through the application of a five-step sequential analysis:

> Step One:  If the claimant is currently engaged in substantial gainful activity, benefits are denied without further analysis.

> Step Two:  If the claimant does not have a severe impairment or combination of impairments, that "significantly limits ... physical or mental ability to do basic work activities," benefits are denied without further analysis.

> Step Three:  If plaintiff is not performing substantial gainful activity, has a severe impairment that is expected to last for at least twelve months, and the severe

14

impairment meets or equals one of the impairments listed
in the regulations, the claimant is conclusively presumed
to be disabled regardless of age, education or work
experience.

Step Four:  If the claimant is able to perform his or her
past relevant work, benefits are denied without further
analysis.

Step Five: Even if the claimant is unable to perform his
or her past relevant work, if other work exists in the
national economy that plaintiff can perform, in view of
his or her age, education, and work experience, benefits
are denied.

*Carpenter v. Comm'r of Soc. Sec.*, 2008 WL 4793424 (E.D. Mich. 2008), citing,

20 C.F.R. §§ 404.1520, 416.920; *Heston*, 245 F.3d at 534.  "If the Commissioner

makes a dispositive finding at any point in the five-step process, the review

terminates."  *Colvin*, 475 F.3d at 730.

"Through step four, the claimant bears the burden of proving the existence

and severity of limitations caused by her impairments and the fact that she is

precluded from performing her past relevant work."  *Jones*, 336 F.3d at 474, cited

with approval in *Cruse*, 502 F.3d at 540.  If the analysis reaches the fifth step

without a finding that the claimant is not disabled, the burden transfers to the

Commissioner.  *Combs v. Comm'r of Soc. Sec.*, 459 F.3d 640, 643 (6th Cir. 2006).

At the fifth step, the Commissioner is required to show that "other jobs in

significant numbers exist in the national economy that [claimant] could perform

15

given [his] RFC and considering relevant vocational factors." *Rogers*, 486 F.3d at 241; 20 C.F.R. §§ 416.920(a)(4)(v) and (g).

If the Commissioner's decision is supported by substantial evidence, the decision must be affirmed even if the court would have decided the matter differently and even where substantial evidence supports the opposite conclusion. *McClanahan*, 474 F.3d at 833; *Mullen*, 800 F.2d at 545. In other words, where substantial evidence supports the ALJ's decision, it must be upheld.

C.   Analysis

Title 20 C.F.R. § 404.1527 specifies how an ALJ must evaluate medical opinion evidence. An ALJ is required to give controlling weight to the opinions of a treating source if the opinion "is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record." 20 C.F.R. § 404.1527(c)(2). If the ALJ chooses not to give a treating source controlling weight, the ALJ must still "apply certain factors—namely, the length of the treatment relationship and the frequency of examination, the nature and extent of the treatment relationship, supportability of the opinion, consistency of the opinion with the record as a whole, and the specialization of the treating source—in determining what weight to give the opinion." *Dickey-Williams v. Comm'r of Soc. Sec.*, 975 F. Supp. 2d 792, 802 (E.D. Mich. 2013) (citing *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir.

16

2004)).

Normally, an ALJ's failure to follow this rule is an error which may constitute a lack of substantial evidence. *Id*. "[C]ourts have remanded the Commissioner's decisions when they have failed to articulate 'good reasons' for not crediting the opinion of a treating source, as § 1527(d)(2) requires." *Id* (citing *Wilson*, 378 F. 3d at 545). But this error is not always dispositive, and may be considered "harmless error" if: "(1) a treating source's opinion is so patently deficient that the Commissioner could not possibly credit it; (2) if the Commissioner adopts the opinion of the treating source or makes findings consistent with the opinion; or (3) where the Commissioner has met the goal of § 1527(d)(2) ... even though she has not complied with the terms of the regulation." *Cole v. Astrue*, 661 F.3d 931, 940 (6th Cir. 2011) (quoting *Wilson*, 378 F.3d at 547).

When refusing to give controlling weight to a treating source, an ALJ must give good reasons for discounting the weight given to a treating-source opinion. *Dickey-Williams,* 975 F.Supp.2d at 803 (citing *Gayheart v. Comm'r of Soc. Sec.*, 710 F.3d 365 (6th Cir. 2013)). These reasons must be supported by the evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight. *Gayheart*, 710 F.3d at 376. This

17

procedural requirement ensures that the ALJ applies the treating physician rule and permits meaningful review of the ALJ's application of the rule. *Id*.

In *Gayheart*, the court ruled that the ALJ failed to set forth good reasons for how and why the treating doctor's opinions failed the controlling weight test because, *inter alia*, he did not identify the substantial evidence that was purportedly inconsistent with the treating source's opinions.  *Id* at 376-377.  Here, in contrast, the ALJ was more specific: Dr. Findley's opinions were not accorded controlling weight because they were not consistent with his own treatment notes, with plaintiff's own normal daily activities and with the opinions of the state agency reviewing psychiatrist.  Unlike *Gayheart*, this is not a case in which the Court could not determine, under the principles of meaningful appellate review of the ALJ's decision, what evidence the ALJ relied on to substantiate his conclusion of less than controlling weight.  *See Blakley v. Comm'r Of Soc. Sec.*, 581 F.3d 399, 409 (6th Cir.2009).  The ALJ thoroughly examined Dr. Findley's opinion and the substantial evidence the ALJ relied on not only existed, but was discussed at length in the ALJ's decision.  *See Dickey-Williams,* 975 F.Supp.2d at 804.

In the case at bar, the ALJ discussed how Dr. Findley's opinions that plaintiff was unable to handle the stress of a regular job, that she had marked limitations in her ability to deal with work stress and maintain attention and concentration and that she would miss three or more days of work per month as a

18

result of her psychological symptoms directly contradicted his clinical findings that she demonstrated no more than mild impairments in short-term memory and concentration, had relatively normal mental status examinations, and experienced consistent improvement in her functioning, mood and anxiety symptoms with treatment, as reported in Dr. Findley's treatment notes. (Dkt. 10-2, Pg ID 56-58, citing Dkt. 10-9. Pg ID 603). The ALJ noted that Dr. Findley's opinions were also contradicted by the other function-by-function assessments he made for plaintiff, namely finding no significant limitations in plaintiff's ability to understand, remember, and carry out simple instructions, sustain an ordinary routine, make simple decisions and work in proximity to others. In other words, Dr. Findley found no significant limitation in plaintiff's ability to meet most of the mental demands of unskilled work. (Dkt. 10-2, Pg ID 58, citing Dkt. 10-10, Pg ID 661-664). *See Coldiron v. Comm'r of Soc. Sec.*, 391 Fed. Appx. 435, 440 (6th Cir. 2010) (internal inconsistency reason to afford less than controlling weight to treating source).

Additionally, the ALJ enumerated the activities of daily living that were inconsistent with Dr. Findley's opinions about plaintiff's inability to withstand ordinary work stress. Specifically, he notes that she had begun to live independently and denied any problems with performing household chores, shopping or managing her finances. The decision also cites plaintiff's statements

19

that she walked or rode her bicycle to the library almost every day, and could drive 10 to 15 miles to her doctor's office.  The ALJ also emphasized plaintiff's reports that Cymbalta helped her stay calm in November 2012, but then testified at hearing that it caused more aggravation and irritability, and that she was doing better without it.  (Dkt. 10-2, Pg ID 56).  Finally, the ALJ noted the state agency psychological consultant, Robert Newhouse, M.D.'s conclusion that plaintiff could perform simple tasks on a sustained basis conflicted with Dr. Findley's opinions.

The undersigned finds that ALJ's recitation of record evidence inconsistent with Dr. Finley's opinions served as the requisite good reason for him to assign those opinions less than controlling weight.  *See Dickey-Williams,* 975 F.Supp.2d at 801-807.  Although the ALJ's speculation regarding a pecuniary motive for Dr. Findley's opinions was improper and insufficient to create "good reason" for assigning them less than controlling weight, to the extent the ALJ relied on that speculation in his decision, that reliance was harmless error.  *See Cole*, 661 F.3d at 940. The ALJ clearly identified, discussed and relied upon substantial legitimate evidence contradicting Dr. Findley's opinions, including Dr. Findley's own treatment notes, thereby satisfying 20 C.F.R. §1527(d)(2), and thus the third prong of the harmless error standard set forth in *Cole*.  *Id.*

Furthermore, along with the ALJ's noted consideration of Dr. Findley's

20

expertise in psychological evaluation and treatment and his treating relationship with plaintiff (Dkt. 10-2, Pg ID 58), the conflicting record evidence provided substantial evidence to support the ALJ's decision to assign little weight to Dr. Findley's ultimate conclusions that plaintiff was unable to withstand the ordinary stress of an unskilled job. *See Dickey-Williams*, 975 F.Supp.2d at 804-805; *see also*, *Kidd v. Comm'r of Soc. Sec.*, 283 Fed. Appx. 336, 341 (6th Cir. 2008); *Poe v. Comm'r of Soc. Sec.*, 342 Fed. Appx. 149, 157 (6th Cir. 2009) (the ultimate responsibility for determining a claimant's residual functional capacity rests with the ALJ, not a physician).  The ALJ was within his "zone of choice" when he chose not to give certain conclusions within Dr. Findley's medical source statement controlling, or even significant, weight. *See Dickey-Williams*, 975 F.Supp.2d at 805(citing *Felisky*, 35 F.3d at 1035).

## IV.   RECOMMENDATION

For the reasons set forth above, the undersigned **RECOMMENDS** that plaintiff's motion for summary judgment be **DENIED**, that defendant's motion for summary judgment be **GRANTED**, that the findings of the Commissioner be **AFFIRMED**, and that this matter be **DISMISSED**.

The parties to this action may object to and seek review of this Report and Recommendation, but are required to file any objections within 14 days of service, as provided for in Federal Rule of Civil Procedure 72(b)(2) and Local Rule

21

72.1(d).  Failure to file specific objections constitutes a waiver of any further right of appeal.  *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of Health and Human Servs.*, 932 F.2d 505 (6th Cir. 1981).  Filing objections that raise some issues but fail to raise others with specificity will not preserve all the objections a party might have to this Report and Recommendation.  *Willis v. Sec'y of Health and Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987).  Pursuant to Local Rule 72.1(d)(2), any objections must be served on this Magistrate Judge.

Any objections must be labeled as "Objection No. 1," "Objection No. 2," etc.  Any objection must recite precisely the provision of this Report and Recommendation to which it pertains.  Not later than 14 days after service of an objection, the opposing party may file a concise response proportionate to the objections in length and complexity.  Fed.R.Civ.P. 72(b)(2), Local Rule 72.1(d).  The response must specifically address each issue raised in the objections, in the same order, and labeled as "Response to Objection No. 1," "Response to Objection No. 2," etc.  If the Court determines that any objections are without merit, it may rule without awaiting the response.

Date: October 7, 2015                     s/Michael Hluchaniuk
                                          Michael Hluchaniuk
                                          United States Magistrate Judge

## **CERTIFICATE OF SERVICE**

I certify that on October 7, 2015, I electronically filed the foregoing paper with the Clerk of the Court using the ECF system, which will send electronic notification to all counsel of record.

<u>s/Tammy Hallwood</u>
Case Manager
(810) 341-7887
tammy_hallwood@mied.uscourts.gov